**The STATE of Ohio, Appellant,**

v.

**HILL, Appellee.**

[Cite as *State v. Hill* (1998), 127 Ohio App.3d 441.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 16126.

Decided May 8, 1998.

**444**

*Carley J. Ingram*, Montgomery County Assistant Prosecuting Attorney, Appellate Division, for appellant.

*Charles McKinney*, for appellee.

---

FREDERICK N. YOUNG, Presiding Judge.

The state appeals the trial court's grant of James Hill, Jr.'s motion to suppress. Having found that the trial court erred in suppressing the evidence, we reverse the judgment of the trial court and remand this action to the trial court.

I

Hill was placed on parole in April 1995. Hill's parole was subject to terms and conditions established by the Montgomery County Adult Parole Authority. At the time he was placed on parole, Hill signed a document entitled "Conditions of Supervision." Paragraph 9 of that document provides, "I agree to a search of my person, my motor vehicle, or my place of residence by a probation/parole officer at any time." Following agreeing to the conditions of his parole, Hill was placed under the supervision of Tony Calabria, a parole officer with the Adult Parole Authority.

After being placed on parole, Hill went to live in a home owned by his mother. Some evidence was presented at the suppression hearing that when a parolee is placed in a home, the owner of the home, in this case Hill's mother, is informed that the home can be subject to a search at any time. Furthermore, there was some evidence that Nora Hill was informed of this. Several other individuals also resided in the home, however, and no evidence was presented as to whether they were informed of the search possibility.

On September 8, 1995, Hill's parole officer received an anonymous phone call from a female who advised him that Hill was selling illegal drugs from that residence. The anonymous informant also told Calabria that Hill placed the

drugs in his mother's bedroom to avoid detection in the event of a search by his parole officer. Finally, the informant told Calabria that Hill kept a firearm in the home, which is also a violation of his parole conditions.

Calabria corroborated the information he received from the anonymous informant by speaking with another parolee. The other parolee confirmed that Hill was selling drugs out of his residence and hiding the drugs in his mother's bedroom to avoid detection by his parole officer. After corroborating this information, Calabria spoke to the anonymous informant a second time, and the informant relayed the same information as in the earlier call. Calabria claims that in addition to this evidence, he had other evidence that Hill was engaged in illegal activity, but he did not specify what evidence. Calabria stated that he could not divulge what that evidence was because it could jeopardize the safety of other persons.

After receiving this information, Calabria called the local drug task force to ascertain whether the task force wanted the Adult Parole Authority to proceed with a search or whether the task force would search on its own. Calabria did not receive a response from the task force. As a consequence, on September 14, 1995, Calabria again contacted the task force to determine whether he should proceed with a search. The task force advised Calabria that it had not reached a decision on the matter.

On September 15, 1995, Calabria asked a fellow parole officer, Tim Jones, to accompany him in searching Hill's residence. When Calabria and Jones arrived at the home, neither of them observed any suspicious activity. Calabria knocked on the door, Hill answered, and Hill let them into the home. According to Officers Calabria and Jones, they asked Hill whether they could search the premises, and Hill consented to the search. Jones proceeded directly upstairs to Hill's bedroom, while Calabria stayed with Hill downstairs. Jones searched Hill's bedroom as well as all of the bedrooms upstairs. Jones did not find any drugs or money in the upstairs bedrooms.

Jones then went downstairs and thoroughly searched all areas downstairs, including Hill's mother's bedroom. Jones discovered a locked Sentry safe under Hill's mother's bed. Jones then obtained Hill's key ring from his bedroom and used the smallest key on the ring to open the box. Jones alleged that it later was determined that any small key would open the box because the lock was broken. When Jones opened the safe, he discovered that it was filled with heroin and cocaine. While in Hill's mother's room, Jones also noticed that one corner of Hill's mother's mattress was higher than the other corners, as if there was something beneath it. Jones looked under the mattress and discovered $4,600. A gun was also discovered on the premises. Hill was then arrested for aggravated drug trafficking.

When Nora Hill returned home, after Jones had already opened the safe, the police asked her to sign a consent to search form, and she agreed. After signing the consent form, the police more completely searched Nora Hill's bedroom. Nonetheless, the police did not find any other incriminating evidence in her bedroom. When the police questioned Nora Hill about the narcotics discovered in her bedroom as a result of the earlier search, she denied that the drugs belonged to her.

On October 12, 1995, the grand jury indicted Hill on two counts of aggravated drug trafficking in cocaine and heroin. On November 2, 1995, Hill filed a motion to suppress the evidence seized during the search of his residence and to suppress any statements made by him after his arrest. After a hearing on the matter, the trial court overruled Hill's motion to suppress on the grounds that Hill's parole officer had reasonable grounds to conduct the search. The court then scheduled another hearing on the issue of whether Hill had standing to contest the search and whether the scope of the search exceeded Hill's consent. The court determined that Hill did indeed have standing to consent to the search and that the search had exceeded the scope of Hill's consent. As a consequence, the court suppressed the evidence gained through the search of Hill's mother's bedroom. The state now brings this timely appeal of that decision.

## II

Under the state's sole assignment of error, the state argues:

"The trial court improperly granted defendant's motion to suppress."

Fourth Amendment rights are personal and, thus, may not be vicariously asserted. *Rakas v. Illinois* (1978), 439 U.S. 128, 133–134, 99 S.Ct. 421, 425, 58 L.Ed.2d 387, 394–395. The defendant bears the burden of proving that he or she has standing to argue that evidence against the defendant was gained in violation of the defendant's Fourth Amendment rights. *State v. Spencer* (May 18, 1990), Montgomery App. No. 11740, unreported, 1990 WL 68957, citing *Rawlings v. Kentucky* (1980), 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633. To have standing, the defendant must demonstrate that he or she had a legitimate expectation of privacy in the area searched. *Id.* A defendant does not have a legitimate expectation of privacy when the evidence against the defendant was gained in violation of another's privacy rights. *Brown v. United States* (1973), 411 U.S. 223, 230, 93 S.Ct. 1565, 1569–1570, 36 L.Ed.2d 208, 214–215; *United States v. Salvucci* (1980), 448 U.S. 83, 85, 100 S.Ct. 2547, 2549–2550, 65 L.Ed.2d 619, 623–624 (stating that "[d]efendants charged with crimes of possession may only claim the benefits of the exclusionary rule if their own Fourth Amendment rights have been violated"); *Spencer* at 3 (finding that "[w]hen a defendant is aggrieved by

an allegedly illegal search of a third-party's property, the Fourth Amendment rights of that defendant have not been infringed").

When the area searched is a shared residence, any resident has standing to contest an illegal entry into the residence. *Bumper v. North Carolina* (1968), 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797. On the contrary, where an officer's entry into a shared residence is lawful, a resident lacks standing to challenge the officer's search of a bedroom that is exclusively used by another resident. See *People v. Cooney* (1991), 235 Cal.App.3d Supp. 1, 286 Cal.Rptr. 765; *Beach v. Superior Court of San Diego Cty.* (4th Dist.1970), 11 Cal.App.3d 1032, 90 Cal.Rptr. 200 (stating that sister did not have the authority to consent to search of her brother's bedroom in shared apartment where there was no evidence that she had a possessory interest in or control of the bedroom). A resident may not contest a search of a bedroom which is exclusively used by another resident because that resident does not have a reasonable expectation of privacy in an area that is under the exclusive dominion and control of another. *Id.* To have standing, the resident must demonstrate that he or she shared dominion and control over the bedroom, that he or she had the right to exclude individuals from the bedroom, or that other indicia when measured by common sense establish that he or she had a privacy interest in the area. *Minnesota v. Olson* (1990), 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85.

A parole officer legally enters a parolee's premises pursuant to the parolee's consent given as a condition of his or her parole when the parole officer has reasonable grounds to believe that the parolee is violating a condition of his or her parole. *State v. Benton* (Mar. 21, 1997), Montgomery App. No. 15850, unreported, 1997 WL 126826. A parolee's consent to search the parolee's shared residence solely extends to areas of the residence where the parolee has dominion and control or the right to exclude others. Thus, a parolee's consent to search generally does not extend to a bedroom of another, especially when that bedroom is exclusively used by the other.

Concomitantly, when a parole officer is legally on the premises pursuant to the parolee's prior consent, but illegally searches the bedroom of another resident, the parolee generally does not have standing to object to the search of the other resident's bedroom. See *Rawlings v. Kentucky*, 448 U.S. at 101, 100 S.Ct. at 2559–2560, 65 L.Ed.2d at 639–640 (finding that defendant had no reasonable expectation of privacy in friend's purse). It is common sense that one individual ordinarily does not have a legitimate expectation of privacy in the bedroom of another just as one does not ordinarily have a reasonable expectation of privacy in another's purse. *Id.* at 105, 100 S.Ct. at 2561, 65 L.Ed.2d at 641–642.

**448**

Hence, to have standing to object to the search of another's bedroom, a parolee, as with any other resident, would have to produce facts that demonstrate that he or she does have a reasonable expectation of privacy in the other's bedroom. *Id.* A parolee would have to prove, for example, that he or she had dominion or control over the area, the power to exclude other's from the area, or any other indicia which measured by common sense demonstrate that he or she had a legitimate expectation of privacy in the area. To judge standing by anything less would allow a parolee to have standing to contest an illegal invasion of another's privacy.

Turning to the present case, we find that Hill's consent to search extended only to his bedroom and common areas in the home. We find that Hill does not have standing to contest the illegal search of his mother's bedroom. 5 LaFave, Search and Seizure (1996) 130–131, Section 11.3(a) (stating hypothetically that although any resident of the household would have standing to contest an illegal entry into the house, where there is a legal entry into the home, a resident might well be found to lack standing to contest police conduct which intruded exclusively upon another's resident's privacy as in the search of that other resident's bedroom).

We determine that Hill lacks standing to contest the search of his mother's bedroom because the record and transcript are devoid of any indication that Hill had a reasonable expectation of privacy in his mother's bedroom. More specifically, we find no evidence in the record or transcripts that Hill had dominion and control over his mother's bedroom or the right to exclude other persons from access to his mother's bedroom. Nor have we found any other indicia which, measured by common sense, demonstrate that Hill had a reasonable expectation of privacy in his mother's bedroom. There is no evidence, for example, that Hill's mother was somehow precluded from rummaging through the items he left in her room or from allowing others to do so.[1]

And we respectfully disagree with the trial court that Hill's alleged attempt to hide the drugs in his mother's bedroom to evade detection by his parole officer, alone, conferred a reasonable expectation of privacy upon Hill in his mother's bedroom. Essentially, Hill's expectation that his parole officer could not search the area stemmed from nothing other than the fact that he did not have a privacy interest in his mother's bedroom. And it is precisely because Hill does not have a privacy interest in his mother's room that Hill does not have

---

1. Not only was there no evidence that Hill had a privacy right in her bedroom, but there was no evidence that he had a privacy right in the safe. It was uncontested that the lock on the safe was broken and that any key could be used to open the lock. Furthermore, there was no evidence as to who was the owner of the safe.

standing to contest the search. Hence, it is a mistake in reasoning to assume that because Hill's consent to search did not extend to a bedroom that is exclusively used by his mother, and that because Hill hid the items there because his consent to search did not extend to her bedroom, Hill has a privacy interest in her bedroom.

One does not have a privacy interest in the house of a neighbor merely because one hid drugs there to evade detection by his or her parole officer. Obviously, the neighbor could allow the police or any other individual to have access to the drugs. To have a privacy interest in the home one would have to have dominion and control over it, the right to exclude others from it, or some other indicia which, judged by common sense, demonstrate that he or she had a privacy interest in the home.

Because we find that Hill lacked standing to contest the illegal search, we uphold the state's assignment of error. Based upon the foregoing, we reverse the trial court's grant of Hill's motion to suppress and remand this action to the trial court for further proceedings not inconsistent with this opinion.

*Judgment reversed*
*and cause remanded.*

GRADY, J., concurs.

FAIN, J., concurs separately.

FAIN, Judge, concurring.

I write separately merely to note my observation that the result in this case might be different if there were evidence that Hill had qualified the consent he gave to the officers to enter the residence where he and his mother were living. In my view, if an individual's consent to enter premises is both necessary and sufficient, then that individual necessarily has standing to object if the ensuing search exceeds the scope of that consent and there are no independent justifications for the search. Otherwise, the person giving consent would be helpless when, after having given the officers permission to enter the premises for the purposes of searching his own areas only, the officers proceed to search the areas of others, whose privacy interests that individual had not intended to compromise. If that were the law, then a person in Hill's position, intending to protect his mother's privacy, would have to refuse the police permission to enter the premises at all, rather than extending permission to enter the premises for the limited purpose of searching his own areas within the premises. That would impede law enforcement by making it impossible for the suspect of their

**450**

investigation to give an enforceable limited consent to invade his own privacy but not that of others.

This is merely theoretical in the case before us because there is no evidence in the record that Hill qualified the consent he gave the officers to enter the premises to conduct a search.