OPINION
The three consolidated cases before us all involve the same facts and issues. The three defendants were cited for consuming alcohol while under age, along with other minors not before us on these appeals.
The defendants filed motions to suppress evidence and, after a hearing at which only the two arresting officers testified, the Oakwood Municipal Court sustained the motions. The State, by the City of Oakwood, proceeding under Crim.R. 12(J), promptly appealed the decision of the court. In its written decision, the trial court set forth findings of fact which are common to all three cases. Except for correction of a name and one finding not supported by the record which we will note in due course, we set forth these findings as the trial court stated them, as follows:
 (1) On September 12, 1998, in the night time hours, Officer Pigman was dispatched to 412 Harmon Boulevard after an anonymous female caller reported that there appeared to be a teenage party at that address. The caller did not report seeing drinking, but commented that it "seems like they are carousing."
 (2) Pigman proceeded to the address. As he approached, he could hear loud music and talking from the house. He noticed that the house was well lit inside.
 (3) He saw three youths in the driveway, a female and two males. When he was seen by them, one of them said: "Here's the cops." The two males ran to the house and the side door. The female walked down the driveway toward Pigman.
 (4) Pigman asked the female her age. She answered: "16." He asked her if she had been drinking. She answered: "No." He asked her if she was aware of anyone under 21 consuming alcohol. She answered: "I don't know." He determined that the female did not smell of alcohol, so he allowed her to leave.
 (5) Pigman then decided to inform the residents at 412 Harmon Boulevard that the City had received a report of a loud underage party. He noticed that the house was no longer illuminated from within. He proceeded to the side door, and knocked on the door. He shined his flashlight into the house through the door. He heard no music or talking. No one answered the door.
 (6) Receiving no response, Pigman proceeded to the front door. He knocked. He rang the doorbell. Again, no one answered the door.
 (7) Suspecting that there may be underage drinking going on inside the premises and that the youths were hiding in the dark, Pigman decided to check the license plates of the vehicles parked in the driveway. He testified that his plan was to determine the direction the youths might take upon leaving the premises so he could check them for possible DUI violations later in the evening.
 (8) One vehicle in the driveway was reported to be owned by Nathaniel Anderson. Pigman discovered from the Fairborn Police Department that there was an active warrant for the arrest of Mr. Anderson for failure to appear on a charge of tax evasion, a misdemeanor. Pigman testified that the Fairborn Police Department sent a detainer to him to arrest and hold Mr. Anderson for failure to appear on a tax evasion charge. When he obtained verification of the warrant, Pigman also learned that Mr. Anderson's address was listed as 430 Forrer Road, not 412 Harman Boulevard.
 (9) Pigman contacted Lt. Luckett, his supervisor, to request permission to "go in" the premises based on the warrant to arrest Mr. Anderson. He testified that he did not seek a search warrant because he did not think he needed one. Lt. Luckett gave permission and proceeded to the location in his cruiser. They approached the front door together, dressed in full uniform. Pigman pounded on the door and announced that he had warrant for the arrest of Mr. Anderson. This time a youth named Kelly Few, age 14-15 years, opened the door. Pigman asked if Mr. Anderson was there. Ms. Few said he was not there. She told him Mr. Anderson did live there but he wasn't there at that time.[1]
 (10) Pigman then advised Ms. Few that he wanted to search the house for Mr.Anderson. Pigman did not advise Few that she had a right to refuse entry by the officers. Pigman did not believe he needed consent in order to enter. According to Pigman, when he asked Ms. Few for permission to enter, as a courtesy, Ms. Few responded: "OK." Pigman detected a slight odor of alcohol about her person while he was talking to her at the front door. Pigman characterized Ms. Few as scared but cooperative.
 (11) Pigman and Luckett entered the front door and encountered perhaps 30 young people in the home. They requested all of them to assemble in the living room. When the young people were assembled, Pigman searched the house for Anderson while Luckett remained at the front door. Pigman was unable to find Anderson after a thorough search.
 (12) During his search of the residence, Pigman found beer cans in the basement, empty beer cans in the trash can in the kitchen, and three or four partially full cans of beer on a grill in the backyard. He never observed any of the young people in possession of an alcoholic beverage. He never observed any of them consume an alcoholic beverage.
 (13) Pigman then decided to separate those assembled in the living room into two groups: (a) those who denied that they had been drinking, and (b) those who admitted that they had been drinking. He then proceeded to check those who were in the "deny-drinking" group, where most of the youths had assembled.
 (14) Pigman checked them by (a) attempting to see if they had physical indicators, such as slurred speech, or an odor of alcohol about them; (b) conducting a horizontal gaze nystagmus (HGN) test on their eyes; and (c) conducting a breath test by using a portable breath testing (PBT) device. He told the young people that he would physically arrest those who were found to be lying and charge them with underage consumption of alcohol. He further told them that he would give a summons in lieu of arrest for the same charge to those who had been drinking and admitted to it.
 (15) As the youths were tested, they were asked their names and ages. Those who passed the tests were allowed to leave the home. Pigman came to Donald Reynolds, who denied having had anything alcoholic to drink, but who had a strong odor of alcohol about his person. After conducting the HGN and PBT tests, Pigman physically arrested and handcuffed Reynolds and charged him with underage consumption because he admitted to being 18 years of age.
 (16) When Reynolds was arrested, several youths shifted from the "deny-drinking" group to the "admit-drinking" group. Pigman proceeded to check those remaining in the "deny-drinking" group. He then checked those in the "admit-drinking" group.
 (17) Defendant was one of three youths who admitted to drinking alcoholic beverages and to being over 18 and under 21 years of age. A summons in lieu of arrest was issued at a later time to him. Youths who were under 18 years of age who admitted to drinking were also issued a summons in lieu of arrest for juvenile court.
 (18) During Pigman's investigation inside the home, none of the youths asked for permission to leave and none of them were given Miranda warnings. Neither Pigman nor Luckett told them that they could not leave. On cross examination, Pigman stated that the youths would not have been permitted to leave if they had asked for permission to leave.
The State presents us with the following sole assignment of error:
 THE TRIAL COURT ERRED IN SUSTAINING THE MOTION TO SUPPRESS (DISMISS) ON THE BASIS THAT THE ARRESTING OFFICER DID NOT HAVE PROBABLE CAUSE TO SEARCH THE PREMISES AT 412 HARMAN BLVD., OAKWOOD, MONTGOMERY COUNTY, OHIO.
After a careful and reasoned analysis, the trial court found that the officers did not have probable cause to enter the premises in order to search for Mr. Anderson. We disagree, and the judgments on all three cases will be reversed.
As a preliminary matter, we note that the appellant raised in his reply brief the issue of standing, arguing that since none of the defendants were residents in this house where they were cited, they lacked standing to assert a Fourth Amendment right of privacy in that particular residence, citing a case by this court, Statev. Hill (1998), 127 Ohio App.3d 441. The attorney for the appellees attempted to counter this argument by filing a brief after the appellant's reply brief, which we struck from the record as being not allowed by the rules. The same counsel then requested oral argument, but that was denied as being untimely. What is clear is that the issue of standing was raised by appellant for the first time in its reply brief, and it is well settled that a new issue may not be raised for the first time in a reply brief.Short v. Hinman (June 30, 1999), Darke App. No. 98 CA 1475, unreported. Even more decisive, however, is the fact that the standing issue was not raised at any time to the trial court and, therefore, it will not be considered on appeal. State v. Coleman
(1988), 37 Ohio St.3d 286, 294. These appeals will, therefore, not be decided on the issue of standing, but rather on whether the officers had probable cause to initiate the search of the premises for Mr. Anderson.
In its findings of fact, amply supported by the record, the trial court found that Officer Pigman had discovered that a car parked in the driveway of the residence was registered to one Nathaniel Anderson, who was subject to an outstanding arrest warrant from the Fairborn Police Department. The radio communication between Officer Pigman and his dispatcher were taped, and that tape was entered into evidence. We have listened to the tape as well as having read the entire transcript of the hearing, and during the conversation another address was given for Anderson, to which Officer Pigman replied: "The addresses aren't the same but the vehicle is in the driveway." When Officer Pigman was told by Kelly Few at the front door that Anderson did indeed live there, all barriers to the police search of the premises for Mr. Anderson evaporated. Rather than finding a constitutional violation, we find that the officers in this case were properly doing their duty in searching for the presence of a man who was the subject of an active arrest warrant in a house where his car was parked in the driveway and they had been told by one who should know that the subject does live there. Indeed, if the officers had not conducted such a search, they could be found to be derelict in their duties.
Thus, having found probable cause for the search of 412 Harmon Boulevard, we find no basis to suppress the evidence of the underage drinking that the officers cited the appellees (and others) for based upon the officers' own personal observations of the teenage children in that home. We expressly do not reach the issue of whether the trial court was correct in suppressing the defendant's statements.
In that we find the officers had the right to search that residence, we find it unnecessary to reach the question of whether Kelly Few's consent for the entry was voluntary. However, we must state that we find nothing in the transcript of the hearing that supports the idea that she was intimidated to the point where her consent was not voluntary.
The assignment of error is sustained, and the judgments in all three cases are reversed. The cases are remanded for further proceedings consistent with this opinion.
WOLFF, J., and FAIN, J., concur.
Copies mailed to:
Robert N. Farquhar
Michael A. Hochwalt
Hon. Robert L. Deddens
[1] The court stated in its findings that Kelly Few told the officer that Mr. Anderson did not live there but sometimes spent the weekends there. That finding is unsupported by the record and, in fact, is contradicted by the record.