**GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff**
**v.**
**KAREEM JOSEPH, Defendant**

Criminal No. 298/2002

Territorial Court for the Virgin Islands

Division of St. Croix

December 18, 2002

TADIA D. KELLY, ESQ., Assistant Attorney General, Christiansted, St. Croix, U.S. Virgin Islands, *Attorney for Plaintiff*

H. HANNIBAL O'BRYAN, ESQ., Territorial Public Defender, Kingshill, St. Croix, U.S. Virgin Islands, *Attorney for Defendant*

ROSS, *Judge*

## MEMORANDUM OPINION

(December 18th, 2002)

THIS MATTER comes before the Court on Defendant's Motion to Suppress Tangible Evidence on Fourth Amendment grounds and the Government's opposition thereto. An evidentiary hearing was held on December 9, 2002 and, for the following reasons, Defendant's motion to suppress will be denied.

## FACTUAL BACKGROUND

On August 16, 2002 a concerned citizen called the Virgin Islands Police Department to report a burglary in progress at # 34 Estate Calquohoun. The suspects were reportedly driving a white Chevrolet Cavalier. Shortly thereafter, Virgin Islands police officers reported that they were following the white Cavalier to the vicinity of # 18 Calquohoun.[1]

Officer Karen Henry was one of several officers who heard these reports. She drove to # 18 Calquohoun where she saw the suspects, Carlos King, Carlos Nieves and Luis Rivera, standing outside the white Cavalier with several officers. She also saw a computer, a laptop and a camcorder inside the open trunk and a television on the ground. Officer Henry questioned Carlos King, the driver of the vehicle. He told her that the items came from Defendant's house. She told King that she had to go back there to verify his information, because there was a report of a burglary in progress reported at that location. He stated that he didn't know anything about that, and repeated that he got the items from Defendant. While Luis Rivera was in Officer Anthony Hector's patrol car, he gave Officer Hector virtually the same information. He stated that he didn't steal anything, and that he got the items from Defendant. He also indicated that Defendant had more items in his home. The officers then proceeded to # 34 Calquohoun with King, Nieves and Rivera.

Meanwhile, the officers heard over their radio that there were more suspects inside # 34 Calquohoun. Upon their arrival, they could see individuals moving around inside the house. One of the officers already

---

[1] The residence of co-defendant Luis Rivera.

at the scene informed them that one of the suspects inside had a weapon. He called central dispatch for assistance from the K-9 unit. At that point Sergeant Rosario arrived, and was able to determine that Defendant was one of the individuals inside the house. Officer Henry testified that they went to Defendant's house in order to verify King's information, and to investigate the reported burglary on the premises, but Defendant was uncooperative. Defendant refused to open the door to the house, stating that he would not do so until his mother, Jennifer DeCastro, came home to deal with the situation.

Upon DeCastro's arrival, the officers informed her that they were investigating a burglary and they believed that there were stolen items inside her house. The officers asked her if they could search her home. She consented orally, then voluntarily signed a consent form. The officers entered the house with DeCastro and searched the rooms. A door to one of the rooms was locked. DeCastro stated that she stored her belongings in the locked room and then DeCastro ordered Defendant to get the key and open the door. Defendant told his mother that he didn't have the key, since she was the only one with a key to that room. She told him to get a knife to pick the lock. After the door was opened, the officers entered the room and searched it. Officer Hector lifted a pink cloth and saw the items in question, computers and two cable boxes. DeCastro indicated that these items did not belong to her, she didn't know to whom they belonged and told the officers that they could take them out of her house. The officers called their forensics unit, who came to process the items before they were removed from the premises. Upon further investigation, the police determined that the items recovered from Defendant's house had been stolen from a nearby residence. Based on this information, on August 20, 2002 Defendant was charged by Information with Possession of Stolen Property and a warrant issued for his arrest.

Defendant moves to suppress the evidence obtained from the warrantless search of his home and seizure of items therein. The Government argues that Defendant lacks standing to challenge the police officers' conduct.

## DEFENDANT HAS NOT ASSERTED A VIOLATION OF HIS OWN FOURTH AMENDMENT RIGHTS

 "The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." *Rakas v. Illinois.* 439 U.S. 128, 132 (1978). Therefore, in order to challenge the search of the storage room or the seizure of items therein, Defendant must demonstrate that he had a reasonable expectation of privacy in that room. *See Rawlings v. Kentucky,* 448 U.S. 98 104-105, 65 L. Ed. 2d 633, 100 S. Ct. 2556, 2561-62 (1980). "When the area searched is a shared residence any resident has standing to contest an illegal entry onto the residence." *State v. Hill,* 127 Ohio App. 3d 441, 713 N.E.2d 73, 76 (1998) citing *Bumper v. North Carolina,* 391 U.S. 543, 20 L. Ed. 2d 797, 88 S. Ct. 1788 (1968). However, "where an officer's entry into a shared residence is lawful, a resident lacks standing to challenge the officer's search of a bedroom that is exclusively used by another resident." *Id.* citing *People v. Cooney,* 235 Cal. App. 3d Supp. 1, 286 Cal. Rptr. 765 (1991); *Beach v. Superior Court of San Diego Cty.,* 11 Cal. App. 3d 1032, 90 Cal. Rptr. 200 (4th Dist. 1970). "A resident may not contest a search of a bedroom which is exclusively used by another resident because that resident does not have a reasonable expectation of privacy in an area that is under the exclusive dominion and control of another." *Id.* In order to for a resident to establish that he had a reasonable expectation of privacy in a searched room, he "must demonstrate that he or she shared dominion and control over the bedroom, that he or she had the right to exclude individuals from the bedroom, or that other indicia when measured by common sense establish that he or she had a privacy interest in the area." *Id.* citing *Minnesota v. Olson,* 495 U.S. 91, 109 L. Ed. 2d 85, 110 S. Ct. 1684 (1990).

 Although Defendant resided on the premises, he did not establish that he had a reasonable expectation of privacy in the storage room searched or the items found therein. Since the police lawfully entered the premises and since the only conduct challenged is the search of a room as to which Defendant has no expectation of privacy, Defendant cannot assert that his own Fourth Amendment rights were violated. *See* 5 LA FAVE, SEARCH AND SEIZURE (1996) 130-131 § 11.3(a), citing *People v. Fleming,* 36 Ill. App. 3d 612, 345 N.E.2d 10 (1975) (police apparently

136

lawfully on the premises where defendant lived to make an arrest, after which they searched locked bedroom used exclusively by defendant's brother, held defendant without standing to question whether brother's consent to that search was voluntary). *See also United States v. Vastola*, 670 F. Supp. 1244, 1275 (D.N.J. 1978) (where the Court, in *dicta*, stated that if it accepted the defendant's argument, that a search conducted pursuant to a warrant exceeded its scope because the basement of his home was outside an area of his control, as true, then the defendant would lack standing, since he would have had no legitimate expectation of privacy in the basement). The facts presented indicate that Defendant's mother used the room to store her belongings. The room was locked, and she was the only person with the key. Thus, although his mother clearly had a reasonable expectation of privacy in the storage room, it is universally accepted that Fourth Amendment rights "are personal rights which ... may not be vicariously asserted." *Alderman v. United States*, 394 U.S. 165, 174, 22 L. Ed. 2d 176, 89 S. Ct. 961 (1969). Therefore, because he has not demonstrated that he had a reasonable expectation of privacy in his mother's locked storage room, Defendant has not met his burden of showing that the search of that room violated his Fourth Amendment rights.

██ ██ At the close of the suppression hearing Defendant argued that, although the search of the room pursuant to the homeowner's direction and consent may have been lawful, the seizure of the objects inside the room violated Defendant's Fourth Amendment rights. "[S]eizures of effects that are not authorized by a warrant are reasonable only because there is probable cause to associate the property with criminal activity." *Soldal v. Cook County*, 506 U.S. 56, 69, 121 L. Ed. 2d 450, 113 S. Ct. 538 (1992). Plain view seizures "must satisfy the Fourth Amendment and will be deemed reasonable only if the item's incriminating character is 'immediately apparent.'" *Id.* citing *Horton v. California*, 496 U.S. 128, 136-137 (1990). Defendant argues that the incriminating character of the items seized, cable boxes and computers, was not immediately apparent and therefore the police lacked probable cause to seize those items.

██ ██ A "seizure" of property occurs when "there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 112, 80 L. Ed. 2d 85, 104 S. Ct. 1652 (1984). However, Defendant has never claimed that he had any possessory interest in the items seized. As previously discussed,

137

Defendant also failed to demonstrate his reasonable expectation of privacy in the storage room from which the items were seized. Likewise, Defendant has failed to assert any proprietary interest in the seized items. Therefore, Defendant has not met his burden of demonstrating that *his* Fourth Amendment rights were violated by the removal of items from his mother's storage room. Accordingly, Defendant's Motion to Suppress will be denied.