OPINION
{¶ 1} Robert Butt appeals from his convictions of two counts of aggravated robbery with firearm specifications, and two counts of aggravated burglary with firearm specifications.
 {¶ 2} The facts underlying this appeal are partially set out in the State's brief and *Page 2 
are as follows:
 {¶ 3} In the early morning hours of October 7, 2007, Richard Gallogly arose from his living room couch where he reclined to watch a movie when he heard a knock at the front door. (Trial Tr. 27, 35.) As he opened his door, he saw a man pulling a mask over his face with a gun in his hand. (Tr. 37.) Gallogly clearly saw the man's face as the porch light was on. (Tr. 37, 43.) Gallogly tried to push the door shut, but the armed man pointed the gun at Gallogly's head and told him he would shoot him in the face and kill him where he stood if he kept resisting. (Tr. 37.) The armed man gained entry and then pistol whipped Gallogly in the head and proceeded to hit him. (Tr. 41-42.)
 {¶ 4} The armed man then proceeded to the bedroom of Anthony Dulaney and ordered him from his bed where he was sleeping. (Tr. 42.) Dulaney rented a bedroom from Gallogly. (Tr. 100.) The suspect also threatened to kill Dulaney. The armed man then began asking for drugs, guns, and money. (Tr. 45.) He then ordered the two men to lay face down on the kitchen floor. (Tr. 45.) Soon thereafter, a second gunman entered the house. (Tr. 49.) The second gunman also demanded to know where the money was. (Tr. 56.) He also proceeded to hit Gallogly and Dulaney. (Tr. 50.) The armed robbers removed a .22 caliber revolver, a .22 caliber rifle, bullets, and a pill bottle with Richard Gallogly's name on it containing blood pressure pills. They also recovered Anthony Dulaney's wallet and miscellaneous papers.
 {¶ 5} Two days later, police went to Victoria Ewing's home and obtained consent to search it. During the search, the police found a bag containing the cylinder of a .22 revolver, bullets, and the pill bottle containing Richard Gallogly's blood pressure pills. Ewing's residence was a boarding house, and each bedroom was a separate unit. *Page 3 
Police found the victims' property in a living room which they described as a common area. (T. 138.)
 {¶ 6} On October 11, 2006, Detective Douglas Baker interviewed Butt after obtaining a "Miranda" waiver from him. Butt denied committing the crimes for which he was a suspect. Butt claimed he was with a "Bud" and "Tori" at the time of the crimes. He did not know where they lived, nor did he know their last names. (T. 181.)
 {¶ 7} On October 19, 2006, Detective Baker of the Dayton Police Department showed Richard Gallogly a spread of six photographs, and Gallogly identified Butt as one of the suspects.
 {¶ 8} Butt's appointed appellate counsel has filed an Anders brief, stating he could find no arguable merit to this appeal. Butt has filed his own brief, and he asserts in his first assignment that Victoria Ewing could not consent to the search of the common area of her boarding house where the evidence was recovered. The State argues that Butt did not have a reasonable expectation of privacy in the common area searched because he did not control that area, nor did he have a right to exclude others from that area, citing State v. Hill (1998), 127 Ohio App.3d 441,713 N.E.2d 73, and Minnesota v. Olsen (1990), 495 U.S. 91,110 S.Ct. 1684, 109 L.Ed.2d 85. We agree Butt could not exclude Victoria Ewing from the common area, and thus she had the right to give consent to the police to search that area. While a landlord cannot consent to the search of a tenant's apartment, the landlord may consent to the search of common areas. Chapman v. United States (1961), 365 U.S. 610,81 S.Ct. 776, 5 L.Ed.2d 828.
 {¶ 9} In his second assignment, Butt claims he was denied his constitutional right to "confront" Officer Timothy Polley who responded to the scene of the alleged *Page 4 
crimes. While the State did not call Officer Polley, Butt called him as adefense witness. (T. 228.) Polley told the court he was one of the first officers to respond on the report that a robbery was in progress at Richard Gallogly's residence. He said Gallogly described the robbers for him, but Gallogly did not indicate that he saw one of the suspect's face. It is thus clear that Butt was able to confront Officer Polley and elicit favorable evidence from him. Butt's second assignment is wholly without merit. Butt also claims that his convictions are against the manifest weight of the evidence, but there is ample evidence in the record to support his convictions. Lastly, he claims that his trial counsel was ineffective for not vigorously pursuing the cross-examination of Richard Gallogly. Specifically, he contends his counsel should have gotten Gallogly to admit that he had seen him on prior occasions at Gallogly's residence picking up Butt's girlfriend, Kimberly Neely. Gallogly admitted on cross-examination that Ms. Neely had stayed at Gallogly's residence on a few occasions, but he denied seeing Butt come to the residence to visit Neely. There is no indication Butt's counsel ineffectively pursued this line of cross-examination of Richard Gallogly. Butt's last assignment is likewise meritless.
 {¶ 10} After briefing was completed, we asked the parties to brief the issue of whether Butt could properly be convicted of two counts of aggravated burglary since Butt only entered one residence to commit the aggravated robberies. The State replied by noting that Butt was charged with two separate counts of the aggravated burglary statute, that is that he trespassed by force into an occupied structure when another person was present with purpose to commit a criminal offense, and inflicted or attempted to inflict harm on Richard Gallogly in violation of R.C. 2911.11(A)(1). Butt was *Page 5 
also charged with committing aggravated burglary by trespassing by force into an occupied structure to commit a criminal offense with a deadly weapon on his person in violation of R.C. 2911.11(A)(2). The State argues that these two separate offenses are not allied offenses of a similar import because elements of the crimes do not correspond to such a degree that commission of one crime will result in commission of the other. State v. Jones (1997), 78 Ohio St.3d 12, 13, 676 N.E.2d 80.
 {¶ 11} Ohio's multiple count statute provides in relevant part that:
 {¶ 12} "Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them." R.C. 2941.25(B).
 {¶ 13} We agree with the State that Butt's conviction for the two separate counts of aggravated burglary can stand. The evidence showed that he entered the victim's home by force, armed with a dangerous weapon. The violation of R.C. 2911.11(A)(2) by Butt was complete at that point. When he then chose to pistol whip Gallogly in the head, he committed the separate aggravated burglary offense of R.C. 2911.11(A)(1) as charged in the indictment.
 {¶ 14} We need not address the more problematic question of whether Butt committed two separate aggravated burglaries by entering Dulaney's bedroom, which he rented from Gallogly, as well as the residence.
 {¶ 15} Upon careful review of the entire record, we are satisfied Butt received *Page 6 
effective representation and a fair trial. We agree that there is no arguable merit to Butt's appeal.
 {¶ 16} The Judgment of the trial court is Affirmed.
FAIN, J., and DONOVAN, J., concur.
Copies mailed to:
Mathias H. Heck, Jr.
Mark J. Keller
Robert A. Butt
Marc N. Greenberg
 Hon. Michael Tucker *Page 1