The STATE of Ohio, Appellee,

v.

MARRIOTT, Appellant.

[Cite as *State v. Marriott,* 189 Ohio App.3d 98, 2010-Ohio-3115.]

Court of Appeals of Ohio,
Second District, Clark County.

No. 2008 CA 48.

Decided July 2, 2010.

Stephen A. Schumaker, Clark County Prosecuting Attorney, and Amy M. Smith, Assistant Prosecuting Attorney, for appellee.

Charles M. Blue, for appellant.

FROELICH, Judge.

{¶ 1} James R. Marriott was convicted by a jury in the Clark County Court of Common Pleas of two counts of aggravated burglary, in violation of R.C. 2911.11(A)(1), a first-degree felony. The court sentenced him to eight years in prison on each count, to be served concurrently, and ordered him to pay a fine of $2,500, restitution in the amount of $3,000, and court costs. On May 15, 2009, we affirmed Marriott's conviction and sentence, holding that his convictions were based on sufficient evidence and were not against the manifest weight of the evidence and that his sentence was not an abuse of discretion, even though it was harsher than those received by his co-defendants. *State v. Marriott,* Clark App. No. 2008 CA 48, 2009-Ohio-2323, 2009 WL 1387474.

{¶ 2} In August 2009, Marriott filed an application to reopen his direct appeal, pursuant to App.R. 26(B). Marriott claimed that his appellate counsel has been ineffective in failing to argue that he had been sentenced on multiple allied offenses of similar import and that his sentence was void due to the trial court's improper notification of postrelease control. We granted Marriott's App.R. 26(B) application, and the matter is now ripe for a decision on the merits of those two issues.

{¶ 3} For the following reasons, the trial court's judgment will be vacated in part, and the matter will be remanded for resentencing in accordance with R.C. 2929.191. In all other respects, the judgment will be affirmed.

I

{¶ 4} We set forth the relevant facts in our original opinion in this action, as follows:

{¶ 5} On September 28, 2007, Betty and Bill McCreary, who were 75 and 79 years old, respectively, resided at 3429 Christina Drive in the Brookwood Mobile Home Park in New Carlisle (Clark County). Between 8:30 p.m. and 9:00 p.m., Mrs. McCreary was preparing for a bus trip that she was planning to take the following day while her husband was using the computer in another room.

{¶ 6} As Mrs. McCreary was packing, she heard a knock on her front door. She opened the door to find a man standing at the door and two other men standing behind him. The man at the door was later identified as Dustin Cable; the other two men were later identified as Joshua Kelsey, the McCrearys' former stepgrandson, and Marriott.

{¶ 7} Cable asked Mrs. McCreary whether she had a car missing. Mrs. McCreary responded that she did not, but her son did. Cable then asked her, "Harold Bartley?" When Mrs. McCreary responded affirmatively, Cable told her to "look out here." As Mrs. McCreary looked, the three men ran into the house; Mrs. McCreary noticed that the two men who had been standing behind Cable were wearing masks.

{¶ 8} The first man into the house pushed Mrs. McCreary onto her couch, pulled her hair, slapped her, and told her, "You sit there." Mrs. McCreary began to scream and holler, "Who are you? What are you doing here? We don't know you." Upon hearing a commotion, Mr. McCreary left the computer room and headed into the short hallway toward his wife. One of the men hit him, knocking him unconscious. When Mr. McCreary began to "come out of it," two men were shouting at him, "Where's your safe?" The men hit Mr. McCreary a second time, causing him to lose consciousness again.

{¶ 9} Fearing that the men "were going to beat [her] husband to death," Mrs. McCreary ran to a neighbor's home to call the police. When Mr. McCreary regained consciousness, no one was in the house. He located his wife at the neighbor's home. Mrs. McCreary discovered that $8,000 in jewelry and her purse were missing. Her purse had contained approximately $700, her identification, her social security card, and credit cards.

{¶ 10} Cable and Kelsey pleaded guilty to burglary for committing the offense at the McCrearys' home. Both identified Marriott as the third participant in the home invasion. Marriott was also identified by Randy and Dawn Sinclair, other residents of Christina Drive, as being in a vehicle with Cable and another person on Christina Drive shortly before the burglary.

{¶ 11} On November 20, 2007, Marriott was indicted on two counts of aggravated burglary. After a jury trial, Marriott was convicted of both counts. The court sentenced him to eight years in prison on each count, to be served concurrently. At sentencing, Marriott was notified that he would be subject to a mandatory term of five years of postrelease control; the trial court's judgment entry, however, stated that he would be subject to mandatory postrelease control "up to a maximum of five years."

## II

{¶ 12} Marriott's first assignment of error states:

{¶ 13} "The trial court erred in convicting the appellant of two counts of aggravated burglary, which are allied offenses of similar import."

{¶ 14} In his first assignment of error, Marriott claims that the trial court should have merged the two counts of aggravated burglary, because there was only one entry into an occupied residence, and the sole animus was to burglarize the McCrearys' residence. Marriott argues that the fact that physical harm was inflicted upon two individuals in the residence does not demonstrate a separate animus; rather, the infliction or threat of physical harm "merely serves to inform the level of the offense." Marriott cites *State v. Allen,* Cuyahoga App. No. 82618, 2003-Ohio-6908, 2003 WL 22972696, to support his argument.

{¶ 15} The state responds that the two counts of aggravated burglary were not allied offenses of similar import, because "there was a separate animus to injure each of the occupants in the residence." The state notes that we addressed a situation of multiple counts of aggravated burglary in *State v. Butt,*[1] Montgomery App. No. 22105, 2008-Ohio-2587, 2008 WL 2222718, and affirmed the conviction on both aggravated-robbery counts.

{¶ 16} R.C. 2941.25, concerning allied offenses of similar import, provides:

{¶ 17} "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

{¶ 18} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the

---

1. The citation provided to us by the state was *State v. Bell,* Montgomery App. No. 22105, 2008-Ohio-2587, which mismatched the case name and the citation. We have rendered opinions in *State v. Bell,* Montgomery App. No. 22448, 2009-Ohio-4783, 2009 WL 2915707, and *State v. Butt,* Montgomery App. No. 22015, 2008-Ohio-2587, 2008 WL 2222718, both of which involved multiple burglary counts. The facts recited by the state in its brief correspond with those in *Butt,* and we presume that the state meant to cite that case.

same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

{¶ 19} "R.C. 2941.25 codifies the double jeopardy protections in the federal and Ohio constitutions, which prohibit courts from imposing cumulative or multiple punishments for the same criminal conduct unless the legislature has expressed an intent to impose them. R.C. 2941.25 expresses the legislature's intent to prohibit multiple convictions for offenses that are allied offenses of similar import per paragraph (A) of that section, unless the conditions of paragraph (B) are also satisfied." *State v. Barker*, 183 Ohio App.3d 414, 2009-Ohio-3511, 917 N.E.2d 324, ¶ 22, citing *State v. Rance* (1999), 85 Ohio St.3d 632, 710 N.E.2d 699.

{¶ 20} In determining whether offenses are allied offenses of similar import under R.C. 2941.25, courts must employ a two-step analysis. *State v. Williams*, 124 Ohio St.3d 381, 2010-Ohio-147, 922 N.E.2d 937, ¶ 16. First, the court must "compare the elements of offenses in the abstract without considering the evidence in the case." *State v. Cabrales*, 118 Ohio St.3d 54, 2008-Ohio-1625, 886 N.E.2d 181; *Williams* at ¶ 16. In making this comparison, courts are not to employ a strict textual comparison of the offenses. Id. Rather, offenses are allied "if, in comparing the elements of the offenses in the abstract, the offenses are so similar that the commission of one offense will necessarily result in commission of the other." *Cabrales* at ¶ 26. If the offenses satisfy this first step, the court must then consider whether the offenses were committed separately or with a separate animus. Id. at ¶ 31; *Williams* at ¶ 16.

{¶ 21} R.C. 2911.11, the aggravated-burglary statute, provides:

{¶ 22} "(A) No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply:

{¶ 23} "(1) The offender inflicts, or attempts or threatens to inflict physical harm on another;

{¶ 24} "(2) The offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control."

{¶ 25} Marriott was convicted of two counts of aggravated burglary, in violation of R.C. 2911.11(A)(1). Both counts in the indictment tracked the language of the statute and were identically worded. Suffice it to say, the two aggravated-burglary offenses, when viewed in the abstract, are not only allied offenses under the first step of the analysis, but the same offense.

{¶ 26} The primary issue under R.C. 2941.25(B) is whether Marriott's offenses were committed separately or with separate animus.

{¶ 27} Since 1974, when the breaking-and-entering offenses were rewritten, there have been three burglary-type offenses: breaking and entering, burglary, and aggravated burglary. R.C. 2911.11; 2911.12; 2911.13. Breaking and entering concerns the trespass of an unoccupied structure; burglary concerns trespassing in an occupied structure when someone other than an accomplice is likely to be present; and, as stated above, aggravated burglary adds the element that the offender inflicts or attempts to inflict physical harm or has a deadly weapon. The distinguishing factor among these offenses is "the relative potential for harm to persons," with aggravated burglary carrying the greatest risk of harm. 1973 Legislative Service Commission Notes to R.C. 2911.11.

{¶ 28} In enacting the statutes proscribing these three offenses, the General Assembly removed distinctions between daytime and nighttime break-ins, the type of property entered, and the motive for entering. *State v. Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, 889 N.E.2d 995, ¶ 66. The Supreme Court of Ohio has determined that "the General Assembly's intent * * * was to broaden the concept of burglary from an offense against the security of the home to one against the security of persons who may be inside." *Gardner* at ¶ 31.

{¶ 29} Although the seriousness of a burglary offense is related to the relative risk to persons, the burglary offenses punish trespasses into structures. Addressing whether jurors must unanimously agree regarding the nature of the crime that the offender was intending to commit after unlawfully entering the structure, the Supreme Court concluded that unanimity was not required, because " 'there is no difference in penalty irrespective of which underlying felony or combination of felonies was intended. Rather, it is [the defendant's] single entry into the dwelling with the requisite intent that constitutes the crime.' " *Gardner* at ¶ 67, quoting *State v. Hammer* (1997), 216 Wis.2d 214, 576 N.W.2d 285.

{¶ 30} In this case, Marriott and his accomplices entered the McCrearys' home with the apparent purpose of committing a theft offense. During the burglary, one of the perpetrators asked Mr. McCreary where his safe was located. After the burglary, Mrs. McCreary discovered that $8,000 in jewelry was missing, along with her purse, which contained approximately $700, her identification, her social security card, and credit cards. There was a single entry, i.e., trespass, into the residence with a single purpose. Although two individuals were threatened with and/or suffered physical harm and there were multiple theft offenses, we agree with Marriott that the facts do not reflect that more than one animus existed for Marriott's trespass into the McCrearys' property.

{¶ 31} Our conclusion is supported by *Allen,* which Marriott cites, and *State v. Powers,* Cuyahoga App. No. 86365, 2006-Ohio-2458, 2006 WL 1351661. In *Allen,* the defendant broke into a residence when two of the residents were home. The women hid in one of the bedrooms and contacted the police, who apprehended the defendant in the basement of the residence. He was subsequently convicted of, among other things, two counts of burglary, in violation of R.C. 2911.12(A)(1), which provides: "(A) No person, by force, stealth, or deception, shall do any of the following: * * * (2) Trespass in an occupied structure * * * when another person other than an accomplice of the offender is present, with purpose to commit in the structure * * * any criminal offense."

{¶ 32} On appeal, Allen claimed that the two counts of burglary should have been merged. The Eighth District agreed, stating:

{¶ 33} "When an offense is defined in terms of conduct toward another, then there is a dissimilar import for each person affected by the conduct. *State v. Phillips* (1991), 75 Ohio App.3d 785, 790, 600 N.E.2d 825, citing *State v. Jones* (1985), 18 Ohio St.3d 116, 118, 18 OBR 148, 480 N.E.2d 408. In this regard, the state urges us to find the burglary offenses dissimilar because each woman experienced 'systematic isolation and terror.' However, the burglary statute at issue here is not defined in terms of conduct toward another person. On the contrary, it is the accused's *entrance* into an occupied structure *when another person* is present that defines the prohibited conduct. There is nothing in this language that proscribes any conduct toward the person or persons present in the structure. It is the mere presence of another individual after an unlawful entrance that is an element of the offense of burglary, not any harm toward that individual. Consequently, we are unpersuaded that these offenses are of dissimilar import. But for the inclusion of the women's names in each count, they are the same offenses. What becomes the issue then is whether the two burglary offenses were committed with a separate animus so that appellant may be punished for both. We think not.

{¶ 34} "The evidence indicates that appellant entered one residence for the purpose of committing a criminal offense. Because he was apprehended within that residence before any further offense was committed, there is nothing from which we can determine that he committed these crimes with a separate animus. Consequently, the trial court erred in convicting and sentencing appellant for both burglary offenses. See, e.g., *State v. Harrison* (Dec. 9, 1999), Cuyahoga App. No. 75294[, 1999 WL 1129587]." (Emphasis sic.) *Allen,* 2003-Ohio-6908, 2003 WL 22972696, at ¶ 21–22.

{¶ 35} In *Powers,* the defendant entered the O'Mearas' home while Mrs. O'Meara was seated on their couch and her husband was asleep upstairs. When the O'Mearas' dog began to bark, the defendant fled the home. He was

apprehended and charged with two counts of burglary, pursuant to R.C. 2911.12(A)(2), which states: "(A) No person, by force, stealth, or deception, shall do any of the following: * * * (2) Trespass in an occupied structure * * * when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense." Following *Allen*, the Eighth District again concluded that the burglary charges were allied offenses of similar import, which should have merged.

{¶ 36} More recently, the Eighth District concluded that a defendant could be found guilty of only one count of aggravated burglary, even though two individuals were assaulted after the defendant's uninvited entrance into a residence. *State v. Lynott*, Cuyahoga App. No. 89079, 2007-Ohio-5849, 2007 WL 3205251. The *Lynott* court stated that "R.C. 2911.01(A) [sic, 2911.11(A)], which defines aggravated burglary, raises the degree of the criminal conduct if certain factors attend the offender's entry. However, it does not contain an additional penalty for each person affected by the conduct." Id. at ¶ 29.

{¶ 37} The state argues that *Allen* and *Powers* are inapposite, because R.C. 2911.11(A)(1) contains an additional element of "inflicts, or attempts or threatens to inflict physical harm on another." The state asserts that, unlike the burglary statute, R.C. 2911.11(A)(1) proscribes conduct toward another person as an element of the offense.

{¶ 38} In our view, the inclusion of the element that the offender "inflicts, or attempts or threatens to inflict physical harm on another" in the aggravated-burglary statute does not convert the aggravated-burglary statute to a statute that is defined in terms of conduct toward another. Unlike, for example, the felonious-assault statute, which proscribes causing or attempting to cause physical harm to another, the burglary and aggravated-burglary statutes state that no person shall *"trespass * * * when another person * * * is present * * * with purpose to commit * * * any criminal offense."* (Emphasis added.) A defendant's infliction or threat of physical harm distinguishes the defendant's conduct from burglary under R.C. 2911.12 and elevates the offense to aggravated burglary under R.C. 2911.11(A)(1); it does not convert aggravated burglary into an assault with a separate animus for each person assaulted during the single entry in the structure.[2]

{¶ 39} The state further argues, citing *Butt*, that we have previously concluded that the same entrance into an occupied structure can support two counts of

---

2. There may have been separate animi for the assaults on the two individuals in the house, but the issue of whether such charges would be allied offenses is not before us. Cf. *State v. Mitchell* (1983), 6 Ohio St.3d 416, 453 N.E.2d 593 (noting that aggravated-burglary and theft laws protect different interests).

aggravated burglary. In *Butt*, an armed man forced his way into the home of Richard Gallogly, pointing a gun to Gallogly's head and threatening to shoot him. The intruder then pistol-whipped Gallogly and hit him. The intruder proceeded to the bedroom of Anthony Dulaney, who rented a bedroom from Gallogly, threatened him, and asked for drugs, guns, and money. Soon after, a second gunman arrived and also assaulted the occupants and demanded money. Butt was subsequently identified as a suspect and convicted of two counts of aggravated robbery and two counts of aggravated burglary – one under R.C. 2911.11(A)(1) and the other under R.C. 2911.11(A)(2) – all with firearm specifications.

{¶ 40} On appeal, Butt's counsel filed an *Anders* brief, but we requested additional briefing on whether Butt could properly be convicted of two counts of aggravated burglary since Butt entered only one residence to commit the aggravated robberies. After this additional briefing, we concluded that "Butt's conviction for the two separate counts of aggravated burglary can stand." *Butt* at ¶ 13. We stated:

{¶ 41} "The evidence showed that he entered the victim's home by force, armed with a dangerous weapon. The violation of R.C. 2911.11(A)(2) by Butt was complete at that point. When he then chose to pistol whip Gallogly in the head, he committed the separate aggravated burglary offense of R.C. 2911.11(A)(1) as charged in the indictment." Id.

{¶ 42} Since we decided *Butt*, the Supreme Court of Ohio has not only decided *Gardner*, 118 Ohio St.3d 420, 2008–Ohio–2787, 889 N.E.2d 995 (which reversed our judgment in *State v. Gardner*, Montgomery App. No. 21357, 2007-Ohio-182, 2007 WL 127663), but also expressly addressed whether the commission of different forms of the same criminal offense constituted the same criminal offense for purposes of R.C. 2941.25. *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149. In *Brown*, the Supreme Court reasoned that aggravated assaults under R.C. 2903.12(A)(1) and 2903.12(A)(2) were allied offenses of similar import, because "[t]hese subdivisions set forth two different forms of the same offense, in each of which the legislature manifested its intent to serve the same interest – preventing physical harm to persons." Id. at ¶ 39. The Supreme Court concluded, in light of the statutory language, that the General Assembly did not intend violations of the two subdivisions "to be separately punishable when the offenses result from a single act undertaken with a single animus. Thus, aggravated assault in violation of R.C. 2903.12(A)(1) and (A)(2) are allied offenses of similar import." Id. at ¶ 40.

{¶ 43} In light of *Gardner* and *Brown*, we likely would not reach the same result today that we reached in *Butt*. As stated in *State v. White*, Cuyahoga App. No. 92972, 2010-Ohio-2342, 2010 WL 2106092:

{¶ 44} "Subsections (A)(1) and (A)(2) of R.C. 2911.11 protect the same societal interests in reducing the risk of harm to persons present in a dwelling during a burglary. The increased risk of harm to the occupants of a structure is what characterizes the 'aggravated' forms of trespassing: subsection (A)(1) relates to inflicting or attempting to inflict physical harm on another while subsection (A)(2) relates to the possession of a deadly weapon on a person or under a person's control. With both subsections designed to protect the same societal interest, we find that they were allied offenses.

{¶ 45} "Having found that the offenses were allied, we proceed to the next step of the analysis and consider whether the offenses were committed separately or with a separate animus. The state offered no proof to show that White trespassed more than once into the dwelling occupied by the victims. The number of victims present inside the house was immaterial to the trespass count—there was one house, so only one trespass." Id. at ¶ 42–43.

{¶ 46} We agree with the Eighth District that the purpose of R.C. 2911.11(A) is to elevate burglary to an aggravated offense when the defendant's conduct raises the risk of harm to persons by having a deadly weapon or by threatening or inflicting physical harm. The aggravated-burglary statute thus criminalizes and enhances the seriousness of the trespass under those circumstances. However, R.C. 2911.11(A) is not meant to criminalize an offender's conduct toward the occupants of the structure; rather, the prosecutor may charge the defendant with an assault offense to satisfy that interest. Accordingly, when a defendant, such as Marriott, enters a residence and threatens, attempts, or inflicts physical harm on more than one occupant during the burglary, the aggravated-burglary offenses merge.

{¶ 47} Marriott's first assignment of error is sustained.

### III

{¶ 48} Marriott's second assignment of error states:

{¶ 49} "The trial court erred in failing to properly notify the defendant of post release control at his sentencing hearing."

{¶ 50} In his second assignment of error, Marriott claims that the trial court erred in failing to properly notify him of postrelease control.

{¶ 51} The state asserts that Marriott was properly notified at his sentencing hearing that he would be subject to a mandatory term of five years of postrelease control. The state concedes, however, that the trial court's judgment entry improperly stated that Marriott would face postrelease control up to a maximum of five years, that Marriott's judgment entry of conviction needs to be corrected, and that this correction must occur following a hearing in accordance

with R.C. 2929.191. The state agrees with Marriott that he has a right to be present at the hearing pursuant to the statute. Because Clark County does not have videoconferencing capabilities, Marriott has the right to be physically present in the courtroom.

{¶ 52} R.C. 2929.191, effective July 11, 2006, sets forth a procedure for the trial court to correct a judgment of conviction when the trial court, either at the sentencing hearing or in the final judgment, failed to properly notify a defendant about the requisite postrelease control or about the possibility of the parole board imposing a prison term for violating a condition of postrelease control. Under that statute, prior to the offender's release from prison and after a hearing, the court may prepare and issue a nunc pro tunc correction to the judgment of conviction.

{¶ 53} R.C. 2929.191(C) details how such a hearing must be conducted. It provides:

{¶ 54} "On and after the effective date of this section, a court that wishes to prepare and issue a correction to a judgment of conviction of a type described in division (A)(1) or (B)(1) of this section shall not issue the correction until after the court has conducted a hearing in accordance with this division. Before a court holds a hearing pursuant to this division, the court shall provide notice of the date, time, place, and purpose of the hearing to the offender who is the subject of the hearing, the prosecuting attorney of the county, and the department of rehabilitation and correction. The offender has the right to be physically present at the hearing, except that, upon the court's own motion or the motion of the offender or the prosecuting attorney, the court may permit the offender to appear at the hearing by video conferencing equipment if available and compatible. An appearance by video conferencing equipment pursuant to this division has the same force and effect as if the offender were physically present at the hearing. At the hearing, the offender and the prosecuting attorney may make a statement as to whether the court should issue a correction to the judgment of conviction."

{¶ 55} In *State v. Singleton*, 124 Ohio St.3d 173, 2009-Ohio-6434, 920 N.E.2d 958, the Supreme Court of Ohio held that R.C. 2929.191 applies prospectively and, thus, "the de novo sentencing procedure detailed in the decisions of the Ohio Supreme Court is the appropriate method to correct a criminal sentence imposed prior to July 11, 2006, that lacks proper notification and imposition of postrelease control." Id. at ¶ 35. The Supreme Court further stated that "because R.C. 2929.191 applies prospectively to sentences entered on or after July 11, 2006, that lack proper imposition of postrelease control, a trial court may correct those sentences in accordance with the procedures set forth in that statute." Id.

{¶ 56} Although *Singleton*'s comment that the procedures in R.C. 2929.191 apply to correct sentences imposed after the effective date of the statute could be

considered dicta, the Supreme Court has since applied that comment to cases where the defendant was sentenced after July 11, 2006, and the court failed to properly notify the defendant of postrelease control. See *State v. Fry*, 125 Ohio St.3d 163, 2010-Ohio-1017, 926 N.E.2d 1239, ¶ 214 (stating that Fry must be resentenced according to R.C. 2929.191 to correct improper term of postrelease control); *State v. Fuller*, 124 Ohio St.3d 543, 2010-Ohio-726, 925 N.E.2d 123 (reversing the appellate court "to the extent that the court of appeals held that a hearing pursuant to R.C. 2929.191 was not required to correct appellant's sentence").

{¶ 57} Accordingly, we agree with the parties that Marriott's judgment entry must be corrected in accordance with R.C. 2929.191, including having a hearing using the procedures set forth in R.C. 2929.191(C).

{¶ 58} Marriott's second assignment of error is sustained.

## IV

{¶ 59} Both assignments of error having been sustained, one of Marriott's convictions for aggravated burglary is vacated, and the matter is remanded to the trial court for resentencing in accordance with R.C. 2929.191. In all other respects, the judgment is affirmed.

Judgment accordingly.

BROGAN, J., concurs.

FAIN, J., dissents.

FAIN, Judge, dissenting.

{¶ 60} I agree with Judge Froelich's opinion for the court in all other respects, but I would overrule the first assignment of error. Consequently, I would reverse the sentence in this case and remand the cause for the sole purpose of correcting the error concerning the length of postrelease control.

{¶ 61} Marriott relies upon *State v. Powers*, Cuyahoga App. No. 86365, 2006-Ohio-2458, 2006 WL 1351661, and *State v. Allen*, Cuyahoga App. No. 82618, 2003-Ohio-6908, for the proposition that the presence of more than one person in a home does not constitute multiple animi that would support a conviction upon multiple counts of burglary. In those cases, the defendants were charged with violating R.C. 2911.12(A)(1) and (2), respectively, which provide:

{¶ 62} "No person, by force, stealth, or deception, shall do any of the following:

{¶ 63} "(1) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other

than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense;

{¶ 64} "(2) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense."

{¶ 65} In each case, the appellate court concluded that the conduct proscribed by the burglary statute was not "defined in terms of conduct toward another person." *State v. Allen* at ¶ 21; *State v. Powers* at ¶ 12.

{¶ 66} In the case before us, by contrast, Marriott was charged with, and convicted of, aggravated burglary, in violation of R.C. 2911.11(A)(1), which provides as follows:

{¶ 67} "No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply:

{¶ 68} "(1) The offender inflicts, or attempts or threatens to inflict physical harm on another."

{¶ 69} Thus, in the case before us, in contrast to the *State v. Powers* and *State v. Allen* cases, the offense of which Marriott was convicted has, as an essential element, the infliction of physical harm, or the attempt to inflict, or the threat to inflict, physical harm upon another. This offense is defined in terms of conduct towards another person.

{¶ 70} When the offender inflicts harm, attempts to inflict harm, or threatens to inflict harm, upon more than one person, there is more than one animus, and the offender may be convicted of more than one offense. *State v. Phillips* (1991), 75 Ohio App.3d 785, 790, 600 N.E.2d 825.